IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS

| | |
|---|---|
| SHANNON C. REYNOLDS, ) | |
| ) | |
| Petitioner, ) | |
| ) | |
| vs. ) | Case No.: 3:11-cv-00978-DRH-PMF |
| ) | |
| ANGELA WINSOR, ) | |
| ) | |
| Respondent. ) | |

**REPORT AND RECOMMENDATION**

**FRAZIER, Magistrate Judge:**

Before the Court is respondent's motion to dismiss (Doc. No. 15). Petitioner Shannon Reynolds is confined at Big Muddy River Correctional Center. He filed a petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2254, challenging a judgment of conviction and sentence originally imposed in the Circuit Court of Perry County in 2001 and amended in 2009. Specifically, Reynolds claims that the trial court caused him to enter an involuntary plea of guilty by making improper and incorrect admonishments during the plea proceeding. Respondent seeks dismissal, claiming that Reynolds' habeas petition is untimely under 28 U.S.C. § 2244(d)(1). The motion is opposed on the basis that the petition is timely under § 2244(d)(1)(D) (Doc. No. 18). A reply is on file (Doc. No. 22).

**I.   Background**

In 2000, Reynolds was charged with three criminal counts (2 counts of aggravated criminal sexual assault and one count of criminal sexual assault) in the Circuit Court for Perry County, Illinois. On April 30, 2001, Reynolds entered an open plea of guilty to one count of aggravated criminal sexual assault. During the plea proceeding, the trial court admonished Reynolds on two

points that are pertinent to Reynolds' due process claims. First, Reynolds was told that he would receive day-for-day credit towards his sentence for the time spent in custody in the county jail:

> **The Court:** So we are not talking about day for day except for county jail time which you do get day for day and you have been sitting there since that place was built, right. . . . So you will get, I will grant you, somewhere in the neighborhood of fifteen months or so doubled. You will get literally two and half years….

(Doc. No. 1, p 7).[1] Second, the court told Reynolds that he would serve three years on mandatory supervised release:

> **The Court:** Obviously, when you are released you would be looking at a three year mandatory supervisory release period that used to be called parole. . . . [So] you got to count that three years after you're released you got to still deal with the Department of Corrections.

(Doc. No. 1, p. 9).

Reynolds was sentenced on June 19, 2001. The prosecutor sought a 30-year term, while Reynolds sought a 6-year term. Following a hearing, the court sentenced Reynolds to serve a 25-year term and signed a judgment purporting to award a total of 942 days of credit for jail time served (calculated by giving day for day credit for 471 days served for a total of 942 days) (Doc. No. 22-1).

On July 17, 2001, Reynolds filed a motion seeking reconsideration of the 25-year term. That motion was heard on October 15, 2001, and denied on October 19, 2001. On direct appeal, the Illinois Court of Appeals vacated the order denying Reynolds' motion and remanded for further proceedings, due to defense counsel failure to file a certificate required by Illinois Supreme Court Rule 604(d). *People v. Reynolds*, No. 5-01-889 (Ill. App. May 10, 2002).

---

1 In Illinois, the Department of Corrections uses a statutory method to calculate and award good conduct credit. 730 ILCS 5/3-6-3. With certain exceptions, some credit is automatically received upon incarceration, while other credit awards are discretionary. See 730 ILCS 5/3-6-3(a)(3).

On remand, new counsel was appointed to represent Reynolds. A second motion for reconsideration of the 25-year term was filed on August 20, 2002. That motion was heard on September 25, 2002. During a colloquy between counsel and the Court, there was a discussion about the Department of Corrections' calculation of good time credits. The court expressed the opinion that Reynolds was mistaken about the calculation. Reynolds' motion for reconsideration of the sentence was denied.

Reynolds appealed again, challenging the 25-year sentence as inappropriate due to factors in mitigation. The sentence was affirmed by the Illinois Appellate Court on the basis that a 25-year term was not disproportionate to the offense. *People v. Reynolds*, No. 5-02-0715 (Ill. App. Sept. 30, 2003).

In July, 2009, Reynolds consulted with Scott Vaughn and formed the impression that the court's sentencing order contained errors. At some unknown time, Reynolds had a different conversation with his cellmate and learned that the cellmate had been held beyond his court-imposed sentence.

On September 9, 2009, Reynolds filed a petition for postconviction relief, arguing that the terms of his plea agreement had been violated in two respects: that he was led to believe that his mandatory supervised release would be served concurrently with his 25-year prison term and that he did not receive all of the sentencing credit promised by the court. The petition was dismissed on September 25, 2009. On the same date, an amended judgment was entered, eliminating – as unenforceable – language awarding 471 days of day-for-day jail credit.

Reynolds appealed the denial of his postconviction petition. The decision was affirmed on February 7, 2011. A petition for leave to appeal to the Illinois Supreme Court was denied on May 25, 2011.

Reynolds filed his § 2254 petition for a writ of habeas corpus on November 1, 2011.

## II.     Limitations Period

The question raised in respondent's motion is whether the petition should be dismissed as untimely under the one year statute of limitations for § 2254 petitions. Title 28, Section 2244(d)(1) states:

> A 1–year period of limitation shall apply to an application for a writ of habeas corpus by a person in custody pursuant to a judgment of a State court. The limitation period shall run from the latest of—
>
> (A) the date on which judgment became final by the conclusion of direct review or the expiration of the time for seeking such review;
>
> (B) the date on which the impediment to filing an application created by State action in violation of the Constitution or laws of the United States is removed, if the applicant was prevented from filing by such State action;
>
> (C) the date on which the constitutional right asserted was initially recognized by the Supreme Court, if the right has been newly recognized by the Supreme Court and made retroactively applicable to cases on collateral review; or
>
> (D) the date on which the factual predicate of the claim or claims presented could have been discovered through the exercise of due diligence.

28 U.S.C. § 2244(d)(1). The respondent has focused on subsection (A). Because Reynolds invokes subsection (D), the Court's initial task is to identify the date or dates when the factual predicate of Reynolds' due process claims (pertaining to good conduct credit and mandatory supervised release) could have been discovered. Reynolds may claim the benefit of a start date under subsection (D) if he acted with due diligence in discovering the factual basis of his claims.

*See Daniels v. Uchtman*, 421 F.3d 490, 492 (7th Cir. 2005). In support of his position, Reynolds points to an obscure event in July, 2009, when he says he consulted with Mr. Scott Vaughn and learned that "underlying facts were not correct." He also suggests that he learned – at an unknown time – details of mandatory supervised release while talking to a cellmate.

The more persuasive view is that most of the facts underlying both of Reynolds' federal claims were presented to Reynolds on April 30, 2001, when he received certain admonishments and formed the impression that he would receive approximately two and one-half years of credit towards his sentence and would be required to serve a term of mandatory supervised release. By September 25, 2002, Reynolds knew additional facts: that the Department of Corrections had not awarded day-for-day credit for presentence custody. While Reynolds may not have fully understood the legal significance of the facts until July, 2009, he knew the crucial facts forming the basis of his federal claims by September 25, 2002.

Reynolds also suggests that the limitations period did not start to run until September 25, 2009, the date the trial court amended the judgment to remove language awarding day-for-day credit for jail time served. While September 25, 2009, is the date the trial court acknowledged the sentence credit error and took corrective action, this is not the date Reynolds could have discovered important facts underlying his federal habeas claims.

If the limitations period is calculated under subsection (D), as suggested by Reynolds, the one-year limitations period commenced on September 26, 2002, and expired on September 26, 2003.

If the limitations period is calculated under subsection (A), as suggested by respondent, the one-year period commenced twenty-one days after Reynolds' sentence became final on the

5

conclusion of direct review: October 21, 2003. Reynolds' suggestion that his direct review was not final until September 25, 2009 – the date the trial court amended the judgment – is unavailing. The trial court's corrective action occurred during a collateral proceeding that did not vacate or alter the 25-year prison sentence. While a postconviction proceeding can interrupt the running of the limitations period, it has no effect on the judgment, which becomes final at the conclusion of direct review. See 28 U.S.C. §§ 2244(D)(1)(A); 2244(D)(2). The October 21, 2003 date takes into account the time Reynolds could have filed a petition seeking discretionary review from the Illinois Supreme Court. Hence, under subsection (A), the limitations period commenced on October 21, 2003, and expired one year later, on October 21, 2004. Absent tolling, Reynolds' habeas petition is untimely whether the commencement date for the limitations period is calculated under subsection (A) or subsection (D).

### III. Tolling

Reynolds suggests that the limitations period should be tolled for the periods of time when he was diligently pursuing postconviction and other state remedies. When calculating the limitations period, the Court does not count the time during which a "properly filed" postconviction application is pending. 28 U.S.C. § 2244(d)(2). In this case, the limitations period expired long before September 9, 2009, the date Reynolds filed his postconviction petition. In these circumstances, there is no tolling because the federal filing deadline had already expired. *De Jesus v. Acevedo*, 567 F.3d 941, 943 (7th Cir. 2009)(the time passing before a collateral proceeding begins is not excluded from the calculation).

Under extraordinary circumstances, Reynolds could be entitled to equitable tolling of the statute of limitations. *Holland v. Florida*, 130 S.Ct. 2549, 2259-65 (2010). Upon review of all

materials, the Court is not satisfied that Reynolds has been pursuing his rights diligently or that some extraordinary circumstance prevented timely filing. In particular, while Reynolds did pursue state court remedies in order to challenge the length of his sentence, he did not file a motion seeking to withdraw his guilty plea in 2001 or 2002, when such a request might have been entertained on the merits. Also, the circumstances presented here (identifying possible due process claims eight years after entering a guilty plea) do not fall into the extraordinary category. Tolling is not available.

## IV. Conclusion

IT IS RECOMMENDED that respondent's motion to dismiss (Doc. No. 15) be GRANTED. This action should be dismissed as untimely under the one-year statute of limitations.

SUBMITTED: __April 22, 2013__.

                                              _s/Philip M. Frazier_
                                              **Philip M. Frazier**
                                              **United States Magistrate Judge**